IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMYETTA KING, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA et al., | : | No. 18-486 |
|     *Defendants*. | : | |

# **M E M O R A N D U M**

PRATTER, J.                                                                                                                           APRIL 3, 2019

      Philadelphia Police Officer Kimyetta King alleges that the City and her commanding officer, Sergeant Nancy Quinn, created a hostile work environment because of Officer King's race. Specifically, Officer King alleges that Sergeant Quinn (1) gave Officer King a difficult assignment without a partner (despite requests for a partner or easier assignment), (2) punished officers who "assist[ed]" Officer King with her work, (3) denied two of Officer King's previously approved vacation requests, (4) reprimanded Officer King for events that were not her fault, and (5) refused to grant Officer King privileges that other officers generally enjoyed. The defendants have moved for summary judgment, arguing that Officer King (1) has not alleged that the City caused her injuries through an official policy or custom, and (2) has not submitted evidence satisfying the elements of a hostile work environment claim. Officer King concedes that she has not pleaded an adequate claim against the City. The Court will grant the motion for summary judgment as to the City but deny the motion as to Sergeant Quinn.

## FACTS

      Officer Kimyetta King, an African American woman, has worked in the Philadelphia Police Department Court Liaison Unit since its inception in 2013. Since 2014, Officer King's

supervisor was Sergeant Nancy Quinn. Sergeant Quinn allegedly caused a hostile work environment for Officer King because of her race. Officer King alleges the following in support of her claim:

- Sergeant Quinn assigned Officer King to a courtroom with a large case load (making that courtroom a particularly busy assignment). Assignments were typically based on seniority and Officer King was more senior than white officers who received more desirable work assignments. Sergeant Quinn also denied Officer King's requests to be transferred to a less busy courtroom.

- Although Officer King worked in a busy courtroom, Sergeant Quinn only assigned Officer King a partner for a total of four months (out of the 3+ years Sergeant Quinn supervised Officer King). White officers assigned to other high-volume courtrooms had partners and could share work.

    o Although at times another officer was "detailed in" Officer King's courtroom, these officers could not assist with most of Officer King's work, as a matter of policy. Detailed in officers had restricted access to Court Liaison Unit records and systems.

- Sergeant Quinn disciplined officers who assisted Officer King with her increased workload.

- Sergeant Quinn attempted to rescind approval of Officer King's previously approved vacation time.

- Sergeant Quinn did not allow Officer King to leave work early, take breaks, and watch movies in the office, despite allowing other officers to engage in such practices.

- Sergeant Quinn did not allow Officer King to engage in an informally approved practice called "sliding out," whereby officers would leave work early and still get paid.

- Court Liaison Unit Officer John Ross Jr. testified during a separate Internal Affairs investigation that "[i]f [Sergeant Quinn] had a problem with you, she had a problem with you whether you were white, Hispanic, or black. If she had a problem with you and you were black, that was a whole different ballgame." Opp. to MSJ, Ex. C. Officer Ross also told Internal Affairs that "if you were a black female and you were the type to not back down, [Sergeant Quinn] had a problem with you." *Id.*

Sergeant Quinn offered unrebutted facts showing that some white officers received the same treatment as Officer King (including not having partners in busy courtrooms). Sergeant Quinn also provided race-neutral explanations for several of the alleged discriminatory incidents:

- ➢ Sergeant Quinn denied one of Officer King's vacation requests after receiving a directive from the Police Commissioner that no officers could take vacation while the President visited Philadelphia;

- ➢ Sergeant Quinn disciplined officers who assisted Officer King because those officers were "detailed in" Officer King's courtroom, and thus were strictly limited to performing certain responsibilities (and were not allowed to perform others); and

- ➢ Sergeant Quinn attempted to cut down on all employees' practice of watching movies in the office.

Sergeant Quinn testified that although she had "favorite" officers who received preferential treatment (and Officer King was not among those favorites), her "favorites" included white officers, African American officers (Sabrina Black-Meyers and Dawn Scott), and an Hispanic officer (Eddie Mendez). MSJ, Ex. 2 at 46:8–47:8. As a result, Sergeant Quinn assigned partners to African American officers other than Officer King and permitted African American officers other than Officer King to "slide out" of work early while still receiving pay.

## LEGAL STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. (citing Anderson, 477 U.S. at 248). Under Rule 56, the Court must view the

evidence presented on the motion in the light most favorable to the non-moving party and draw all evidences in that party's favor. Id. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Where the non-moving party bears the burden of proof on a particular issue, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## DISCUSSION

Officer King brings a § 1981 hostile work environment claim against the City of Philadelphia and Sergeant Quinn. The Court addresses each claim in turn.

### 1. Claim Against the City of Philadelphia

Officer King concedes that she has not pleaded an adequate claim against the City. The record also does not include any facts showing that the Police Department employed a policy or custom permitting or encouraging racial discrimination. See Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978). "Although Monell concerned § 1983 actions, the Supreme Court in [Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)] extended Monell to cases arising under § 1981." McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009). The motion for summary judgment, insofar as it relates to the City of Philadelphia, is granted.

### 2. Claim Against Sergeant Quinn

Hostile work environment claims under § 1981 have five elements: "(1) the employee suffered intentional discrimination because of her/his race, (2) the discrimination was severe and pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same race in that position, and (5) the existence of *respondeat superior* liability." Allen v. Nat'l R.R. Passenger Corp. (Amtrak), 228 F. App'x 144, 146–47 (3d Cir. 2007) (alteration and citation omitted). The first four elements establish a hostile work environment, and the fifth element determines employer liability. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). Because there is no viable Monell claim against the City, employer liability is irrelevant here. The parties only dispute the first two elements.[1]

---

[1] In addition to arguing that Officer King cannot establish the first two elements of the *prima facie* case for hostile work environment, Sergeant Quinn asserts that Officer King improperly aggregates discrete acts of discrimination in an attempt to create a "continuing violation theory of hostile work environment." MSJ at 11–12. Although Sergeant Quinn attempts to rely on O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006), for this

5

### A. Whether Sergeant Quinn Discriminated Against Officer King Because of Her Race

Although Sergeant Quinn's actions alone may not support an inference of discrimination, there are facts that could allow a factfinder to determine that Officer King suffered intentional discrimination because of her race.

The record reflects in at least two ways that Sergeant Quinn's actions displayed a personal—rather than racial—animus towards Officer King. First, Sergeant Quinn emphasizes that there is no record of her making racially inflammatory remarks or invoking race as the basis for any action taken. See Howell v. Millersville Univ. of Pennsylvania, 283 F. Supp. 3d 309, 333 (E.D. Pa. 2017), aff'd, No. 17-3538, 2018 WL 4236592 (3d Cir. Sept. 6, 2018) (granting summary judgment on hostile work environment claim where "every single one of [the allegedly discriminatory] acts is neutral" with respect to protected class membership).

Second, Sergeant Quinn asserts that each of the alleged instances of discrimination were in fact facially neutral because she treated some white officers the same as Officer King (and other African American employees—who were among her "favorites"—better than she treated Officer King). For example, although Sergeant Quinn only temporarily assigned Officer King partners, Sergeant Quinn assigned some African American officers partners and she gave at least four white officers solo assignments. MSJ at 9. Sergeant Quinn also allowed some African American officers to "slide out" of work early, even though Officer King was not one of them. As such, Sergeant Quinn asserts that she was, at worst, an "equal-opportunity offender" who

---

argument, Sergeant Quinn misreads O'Connor. O'Conner does not, as Sergeant Quinn purports, state that "discrete acts cannot be aggregated into a hostile work environment claim." MSJ at 12. Instead, O'Conner merely discusses when the statute of limitations begins to run for hostile work environment claims, depending on whether the claim asserts actionable discrete acts or an aggregate theory. 440 F.3d at 126–28. Sergeant Quinn does not argue that Officer King's claims are barred by the statute of limitations, and so O'Conner does not affect the Court's analysis.

treated some white officers the same as Officer King, and therefore Officer King cannot establish the requisite inference of racial animus. See Betz v. Temple Health Sys., No. 15-00727, 2015 WL 4713661, at *4 (E.D. Pa. Aug. 7, 2015) (no hostile work environment claim where wrongdoers "appear to have been equal opportunity offenders, putting their lewd conduct on display for all to see, regardless of race, color, religion, sex, or national origin."); see also Koschoff v. Henderson, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000), aff'd sub nom. Koschoff v. Runyon, 35 F. App'x 357 (3d Cir. 2002) ("Verbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender (or membership in other protected groups). . . . Similarly, conduct motivated by a bad working relationship is not . . . discrimination.").

Sergeant Quinn appears to be correct that her actions, as alleged, do not on their own give rise to an inference of race-based animus. Comparable Title VII cases decided in this District are illustrative. For example, in McNeil v. Greyhound Lines, Inc., 69 F. Supp. 3d 513 (E.D. Pa. 2014), aff'd 628 F. App'x 101 (3d Cir. 2015), the Court granted a defendant's motion for summary judgment because the fact that other African American employees "were not disciplined tend[ed] to support [the defendant's] contention that it did not discriminate against [plaintiff] on the basis of race." Id. at 525; see also Pankey v. Philadelphia Hous. Dev. Corp., No. 09-3943, 2011 WL 1161918, at *3 (E.D. Pa. Mar. 29, 2011) (no discrimination on race where female African American plaintiff was reprimanded "but [others] were not reprimanded . . . [because] three of the six 'similarly situated' employees were African–American women."). In another case, Frazier v. Exide Technologies, No. 11-1863, 2016 WL 6600262 (E.D. Pa. Nov. 8, 2016), the Court granted summary judgment against a plaintiff alleging that he had received harder work because of his race. The Court determined that because one third of the plaintiff's

7

co-workers had a higher percentage of difficult work assignments, the plaintiff could not establish that he was given more hard work based on his race. Id. at *6.

Nonetheless, even though Sergeant Quinn's actions, standing alone, do not give rise to an inference of discriminatory animus, the record still reflects that a jury could determine that Sergeant Quinn acted because of a racial animus. Aside from receiving allegedly disparate treatment,[2] Officer King emphasizes the testimony of Officer John Ross to Internal Affairs, which indicated that Sergeant Quinn was especially tough on black female officers. Officer Ross said, "[i]f [Sergeant Quinn] had a problem with you and you were black, that was a whole different ballgame," especially "if you were a black female and you were the type to not back down." Opp. to MSJ, Ex. C. Officer Ross's statement at least creates a disputed fact as to whether race may have been a factor in Sergeant Quinn's treatment of Officer King, a black female officer.

Indeed, this sort of circumstantial evidence of animus can, in some cases, be sufficient to establish discriminatory intent. "Supreme Court precedent does not support the need for a plaintiff to demonstrate direct evidence of her harasser's motivation for discrimination[.]" Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 278 (3d Cir. 2001). Instead, the facts must only give rise to an inference of discrimination based on the plaintiff's membership in a protected class. Id. at 278–79. As the Third Circuit Court of Appeals has stated, "evidence regarding an employer's treatment of other members of a protected class is especially relevant to the issue of the employer's discriminatory intent." Ansell v. Green Acres

---

[2] Officer King asserts that Sergeant Quinn's refusal to assign a partner with Officer King (but not certain white officers), Sergeant Quinn's assignment of Officer King to a high-volume courtroom (despite her seniority over white officers who received preferable assignments), and Sergeant Quinn's refusal to allow Officer King to "slide out" early (despite allowing some white officers to slide out early) show that she was treated differently, but Officer King does not establish that these actions, on their face, were racially motivated.

8

Contracting Co., 347 F.3d 515, 523 (3d Cir. 2003) (citing Becker v. ARCO Chemical Co., 207 F.3d 176, 194 n.8 (3d Cir. 2000)). A plaintiff alleging employment discrimination may challenge an employer's race-neutral explanation by showing "that the employer has discriminated against other members of his protected class or other protected categories of persons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994); accord Abrams v. Lightolier Inc., 50 F.3d 1204, 1214–15 (3d Cir. 1995) (holding that evidence as to a supervisor's attitude toward other older employees and the manner in which he treated them was relevant to whether supervisor "harbored a discriminatory attitude against older workers," making "the existence of an improper motive for the discharge decision more probable"). It therefore follows that evidence of Sergeant's Quinn's *attitude* towards black employees generally is similarly relevant to show that Sergeant's Quinn's justification for her treatment of Officer King may have been pretextual.[3] The Court determines that Officer King has identified facts that could allow a jury

---

[3] After oral argument, the Court instructed the parties to brief whether Officer Ross's statements—made during a separate Philadelphia Police Department internal affairs investigation—are admissible and may be considered by the Court in the context of this motion. Evidence may be considered in a form which is inadmissible at trial, so long as the content of the evidence is capable of admission at trial. See Fed. R. Civ. P. 56(c)(2); see also Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1235 n.9 (3d Cir. 1993) (on summary judgment, courts may consider statements that are "capable of being admissible at trial.").

Sergeant Quinn argues that because the record does not establish that Officer Ross had personal knowledge of Sergeant Quinn's interactions with Officer King specifically, Officer Ross's statement is inadmissible. Although Sergeant Quinn is correct that a witness's testimony must be supported by personal knowledge of the matter, see Fed. R. Evid. 602, Sergeant Quinn takes an overly narrow view of the proposition for which Officer Ross's testimony is being offered. Officer King relies on Officer Ross's statement to establish Sergeant Quinn's *general* attitude towards and treatment of black women, rather than Sergeant Quinn's *specific* attitude towards Officer King. Because the record establishes that Officer Ross worked in the same unit as and under the supervision of Sergeant Quinn, Officer Ross had personal knowledge of Sergeant Quinn's general behaviors and Officer Ross's statement is capable of admission (as would be Officer Ross's testimony at trial). See Ansell v. Green Acres Contracting Co., 347 F.3d 515, 521 (3d Cir. 2003) ("Evidence of an employer's conduct towards other employees has

to conclude Sergeant Quinn intentionally discriminated (if, indeed, she did discriminate) against Officer King because of her race.

### B. Whether the Discrimination Was Severe or Pervasive

Officer King has also established facts sufficient to avoid summary judgment on the issue of whether the alleged discrimination was severe or pervasive.

"To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Mandel, 706 F.3d at 168 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Further, "[t]he 'severe or pervasive' standard is disjunctive and so 'a plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions.'" Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 215 n.12 (3d Cir. 2017) (quoting Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 119 (2d Cir. 2010)). The inquiry is necessarily fact intensive, and so "the severity and pervasiveness evaluation is particularly unsuited for summary judgement because it is 'quintessentially a question of fact.'" Rorrer v. Cleveland Steel Container, 712 F. Supp. 2d 422, 429 (E.D. Pa. 2010) (quoting O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1098 (10th Cir. 1999)).

Sergeant Quinn argues that because the complaint does not specifically describe the frequency of her allegedly discriminatory conduct, Officer King cannot establish that the discrimination was pervasive. But this overlooks that Officer King endured the effects of

---

long been held relevant and admissible to show that an employer's proffered justification is pretext.") (collecting cases).

Sergeant Quinn's alleged discrimination every day. In other words, once Sergeant Quinn allegedly discriminated against Officer King by assigning her to a busy courtroom without a partner, Officer King had to work in that courtroom daily. As a result, a factfinder could determine that the discrimination was pervasive in that Officer King was repeatedly affected by the alleged discrimination. Some other alleged discriminatory acts—such as not allowing Officer King to "slide out" of work early—were similarly ongoing; Officer King was continually unable to participate in these otherwise apparently accepted actions.[4] Because this analysis is typically a question of fact, and because a factfinder could find that the discrimination was pervasive insofar as it was ongoing, the Court will not grant summary judgment on this basis.

## CONCLUSION

It is unclear from the record whether Sergeant Quinn treated Officer King differently because of Officer King's race or merely because Officer King was not one of Sergeant Quinn's "favorites." Because fact issues remain, the Court will deny the motion as to the hostile work environment claim against Officer King. But the record allows only one conclusion as to the claim against the City of Philadelphia, which must be dismissed. As a result, and based on the foregoing analysis, the motion for summary judgment is granted in part and denied in part. An appropriate order follows.

BY THE COURT:

s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] The Court sets forth no view at this time as to whether or to what extent Officer King's desire to "slide out" of work early merits consideration in this case.